## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| ERIC BRANDON EDWARDS, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 1:13-cv-00570-MHH |
| | } | |
| AGRIUM ADVANCED | } | |
| TECHNOLOGIES (U.S) INC., | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

This opinion concerns a proposed FLSA settlement.  In his complaint, plaintiff Eric Brandon Edwards contends that defendant Agrium Advanced Technologies, Inc. violated provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.  The parties have agreed to settle Mr. Edwards's FLSA claims, and they have asked the Court to review the terms of the proposed settlement.  (Doc. 19).[1]  For the reasons stated below, the Court approves the settlement because it is a fair and reasonable compromise of a bona fide dispute.

---

[1] The Court conditionally granted the parties' request to file under seal both their motion for settlement approval and various documents related to the proposed settlement.  (Doc.18).  After it reviewed the parties' submissions, the Court informed the parties that it found no compelling reason to seal the motion or the related documents.  The Court permitted the parties to file a joint brief if they believed compelling reasons to maintain the seal existed.  (Doc. 20).  The parties did not file a brief.  The Court lifted the seal on the documents (*see* Doc. 22) because it is not inclined to review FLSA settlements under seal.  *See Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1245 (M.D. Fla. 2010) ("Sealing an FLSA settlement agreement between an employer and employee, reviewing the agreement *in camera*, or reviewing the agreement at a hearing without

## I.    BACKGROUND

Mr. Edwards filed this lawsuit on March 27, 2013.  (Doc. 1).   In his complaint, Mr. Edwards states that he worked for Agrium from March 2008 until February 2013.  (Doc. 1, ¶¶ 5-6).  He was last employed as an operator.[2]  (Doc. 1, ¶ 7).  Mr. Edwards was a classified, non-exempt employee paid by the hour.  (Doc. 1, ¶ 8).  Mr. Edwards contends that he regularly worked more than 40 hours per week, and Agrium paid some but not all of his overtime hours at one and a half times his regular rate of pay.  (Doc. 1, ¶¶ 10-11).

According to Mr. Edwards, Agrium used the rounding option available under 29 C.F.R § 785.48(b) to round the time of hourly, non-exempt employees to the nearest fifteen minutes.  (Doc. 1, ¶ 13).[3]  Mr. Edwards

---

the agreement's appearing in the record (in any event precluding other employees' and the public's access to, and knowledge of, the agreement) thwarts Congress's intent both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace."); *see also Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) ("Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'") (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).

[2] During a March 18, 2014 hearing on the parties' motion for settlement approval, plaintiff's counsel explained that Mr. Edwards operated a computer that mixed fertilizer.  (Tr. March 18, 2014 hearing).  A copy of the hearing transcript is available upon request.

[3] The regulations describe "rounding practices" as follows:

It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour.  Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work.  For

asserts that Agrium failed to properly apply this rounding technique to the time he worked. (Doc. 1, ¶ 14). Mr. Edwards alleges that Agrium scheduled him to work four 12 hour shifts one week and three 12 hour shifts the next week. (Doc. 1, ¶ 16). Mr. Edwards adds that he typically arrived at work about 25 to 30 minutes before the start of his shift so that he could confer with the operator whom he was replacing to determine the status of ongoing work. (Doc. 1, ¶ 17). Mr. Edwards maintains that Agrium required him to perform this work "off-the-clock." (Doc. 1, ¶ 18). Mr. Edwards also claims that he worked 15 to 30 minutes "off-the-clock" at the end of his shift. (Doc. 1, ¶ 19). According to Mr. Edwards, Agrium did not pay him overtime for his "off-the-clock" pre-shift and post-shift hours. (Doc. 1, ¶ 21).

Agrium acknowledges that the FLSA authorizes this action and that the Court has subject matter jurisdiction over Mr. Edwards's claims. (Doc. 8, ¶ 1). Agrium disputes that it used the rounding option available under 29 C.F.R. § 785.48(b) to round Mr. Edwards's time to the nearest fifteen minutes and that it failed to properly round Mr. Edwards's time. (Doc. 8, ¶¶ 13-14). Agrium contends that it sometimes scheduled Mr. Edwards to work four 12 hour shifts one

---

enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48.

week and three 12 hour shifts the next week; however, Agrium maintains that this was not Mr. Edwards's schedule for every work week during the relevant time period. (Doc. 8, ¶ 16). Agrium denies that Mr. Edwards worked "off-the-clock" before or after his assigned shifts or that it failed to pay Mr. Edwards overtime. (Doc. 8, ¶¶ 17-20). Based on affirmative defenses, Agrium denies that Mr. Edwards is entitled to relief under the FLSA. (Doc. 8, pp. 4-6).

As part of their settlement negotiations, the parties exchanged payroll and personnel data and discussed expected trial testimony. (Doc. 19, p. 2, ¶ 2). Both parties agree that continued litigation would not produce more economically beneficial results than their stipulated compromise. (Doc. 19, p. 2, ¶ 4). In exchange for dismissal of this action with prejudice, Agrium has agreed to pay Mr. Edwards a total gross sum of $9,750.00. (Doc. 19, ¶ 6.1). The $9,750.00 consists of $1,000.00 to Mr. Edwards for lost wages; $1,000.00 to Mr. Edwards for liquidated damages; and $7,750.00 in attorney fees. (Doc. 19, ¶¶ 6.1, 6.2). The $1,000.00 proposed payment to Mr. Edwards for lost wages is just shy of the total amount of overtime wages that plaintiff's counsel calculated following his review of Mr. Edwards's payroll data. (Tr. March 18, 2014 hearing).

In addition to his FLSA claim, Mr. Edwards asserts a claim against Agrium for money due and owing. (Doc. 1, ¶¶ 23-27). Mr. Edwards contends that Agrium owes him 72 hours of unused vacation pay in the amount of

$1,342.08.  (Doc. 1, ¶¶ 25-27).  The settlement agreement between Mr. Edwards and Agrium contains language that releases Agrium from the money due and owing claim.  (Doc. 19, p. 3, ¶ 4.1).  The agreement also provides that Mr. Edwards will not to seek future employment with Agrium, (Doc. 19, p. 4, ¶ 5.1), and the parties have agreed not to provide information or statements, or take any action, that would cause the other party "embarrassment or humiliation or otherwise cause or contribute to the other [p]arty being held in disrepute."  (Doc. 19, ¶ 7.1).

On this record, the Court considers the parties' motion to approve the proposed settlement of Mr. Edwards's FLSA claim.

## II.    DISCUSSION

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.'  Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages."  *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981)); *see also* 29 U.S.C. §§ 202, 207(a).  Congress designed the FLSA "to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of 'overwork' as well as

'underpay.'" *Barrentine*, 450 U.S. at 739 (emphasis in original). In doing so, Congress sought to protect, "the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'" *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (quoting *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945)).

If an employee proves that his employer violated the FLSA, the employer must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs. 29 U.S.C. § 216(b). "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. ex. Rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)); *see also Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 (1945). "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputedly owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011).

Consequently, parties may settle an FLSA claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim. To compromise a claim for unpaid wages, the parties must "present to the district

court a proposed settlement, [and] the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353; *see also Hogan*, 821 F. Supp. 2d at 1281-82.[4] "[T]he parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). The information that the parties provide also should enable the Court "to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy." *Hogan*, 821 F. Supp. 2d at 1282. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," then a court may approve a settlement. *Lynn's Food*, 679 F.2d at 1354; *see also Silva*, 307 Fed. Appx. at 351 (proposed settlement must be fair and reasonable).

---

[4] In *Lynn's Food*, the Eleventh Circuit Court of Appeals explained, "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages. The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d at 1352-53 (footnotes omitted). The Eleventh Circuit recently reiterated the import of *Lynn's Food*. *See Nall v. Mal–Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013).

Based on the Court's review of the proposed settlement agreement and the information that the parties submitted regarding the terms of the proffered settlement, the Court finds that there is a bona fide dispute in this matter that supports the proposed settlement. The settlement proceeds of $1,000.00 in compensatory damages and $1,000.00 in liquidated damages represent a fair and reasonable compromise based on the existing evidence regarding unpaid wages. Mr. Edwards maintains that Agrium did not compensate him for pre-shift and post-shift "off-the-clock" work. Agrium denies that it failed to properly compensate Mr. Edwards. The parties agreed upon a method to calculate the approximate compensation Agrium owes Mr. Edwards for the time he clocked in and out before and after his scheduled shifts during the relevant time period. The Court finds that the method used to calculate Mr. Edwards's disputed unpaid overtime is fair and reasonable under the circumstances of this case.

The parties negotiated, and Agrium does not object to, attorney's fees of $7,950.00. The "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 Fed. Appx. at 351 (citing *Lynn's Food*, 679 F.2d at 1352); *see also Briggins v. Elwood TRI, Inc.*, 2014 WL 975701 at * 13, --- F. Supp. 2d ----, (N.D. Ala. March 11, 2014) (noting that even where payment of

8

attorney's fees does not reduce the compensation negotiated for and payable to an FLSA plaintiff, "the court is required to review for fairness and approve the fee and expenses proposed to be paid by the defendants in the settlement.") (citing *Silva*, 307 Fed. Appx. at 349).

During the March 18, 2014 hearing in this matter, Mr. Edwards's attorney explained that he logged 26 hours in this case. Given the $7,750 attorney fee, plaintiff's counsel will be compensated at an hourly rate of approximately $298.[5] The Court finds that this amount adequately compensates counsel for the time invested in this action where the parties engaged in no motion practice, and to the Court's knowledge, engaged in very little discovery.[6] Based upon the information

---

[5] At the hearing on the parties' motion for settlement approval, plaintiff's counsel provided little detail to the Court relating to the fee award. He mentioned that the fee amount includes expenses, but his expenses are insignificant. This suggests that the hourly rate for this case may be closer to $290. On the other hand, in evaluating the reasonableness of attorney fees paid pursuant to an FLSA settlement, "the court should exclude 'time spent on discrete and unsuccessful claims.'" *Briggins*, 2014 WL 975701 at *14 (quoting *Norman v. Hous. Auth. of the City of Montgomery,* 836 F.2d 1292, 1302 (11th Cir.1988)). It is likely that the 26 hours that plaintiff's counsel spent on this case included some work on the claim for money due and owing that Mr. Edwards has abandoned. Therefore, plaintiff's counsel's hourly rate in this case appears to be in the range of $290 to $350.

[6] In *Briggins*, the Court performed a detailed lodestar analysis to determine whether the negotiated attorney's fees in that FLSA settlement were fair. *See Briggins*, 2014 WL 975701, *13-18. The Court noted that in the Eleventh Circuit, the lodestar method has effectively replaced the balancing test prescribed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974). *Id.* at *14. Nevertheless, the Court explained that the *Johnson* factors may be part of a reasonableness analysis. *Id.* Although it did not require Mr. Edwards's counsel to do so here, attorneys for FLSA plaintiffs should be prepared to submit evidence to enable the Court to evaluate the reasonableness of the fee to which the parties agree. This evidence informs the Court's analysis of whether counsel is adequately compensated and also helps the Court determine whether the compensation paid to FLSA plaintiffs is "separate and distinct from the settlement agreement to pay [counsel's] fees and expenses." *See id.* at *13.

submitted to the Court, it does not appear this attorney's fee award in any way compromises Mr. Edwards's recovery. The parties explained that Mr. Edwards's attorney's fees were negotiated separately, and Mr. Edwards is receiving nearly full relief. Accordingly, the Court finds that under *Silva*, the agreed attorney's fee adequately compensates Mr. Edwards's counsel and does not taint Mr. Edwards's recovery.

In addition to section 6 concerning settlement payments, certain provisions of the settlement agreement require scrutiny. First, paragraph 4.1 contains broad release language that generally is ill-suited to an FLSA release. *Hogan*, 821 F. Supp. 2d at 1284 (stating that pervasive release language in an FLSA settlement is "overbroad and unfair" and should be "closely examined"). Here, the release language pertains not only to Mr. Edwards's FLSA claim but also to his claim for money due and owing. Because the settlement encompasses a non-FLSA claim, the pervasive release provision will not stymy the settlement.[7] For the same reason, paragraph 5.1, which typically would constitute an impermissible side deal regarding Mr. Edwards's future employment, will not hinder this FLSA settlement. *Id.* at 1282; *see also Parker v. Encore Rehabilitation, Inc.*, 2012 WL 6680311, *5-6 (S.D.Ala. Dec. 21, 2012). Finally, paragraph 7.1 regarding non-disparagement is permissible because the provision contains mutual covenants.

---

[7] It appears that the word "claims" or a similar term is missing from the third line of paragraph 4.1.

## III.   CONCLUSION

For the reasons stated above, the Court approves the parties' proposed settlement of Mr. Edwards's FLSA claim.  The Court concludes that there is a bona fide dispute regarding Mr. Edwards's FLSA claim, and the terms that the parties have negotiated constitute a fair and reasonable resolution of that dispute. Therefore, the Court approves the FLSA settlement.  By separate order, the Court will dismiss this action.

**DONE** and **ORDERED** this 25th day of March, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE